**UNITED STATES of America,**
**Defendant-Appellant,**

v.

**Sybil HUTCHINS, by next friend, Vera Inez Hutchins, Plaintiff-Appellee.**

**No. 13590.**

United States Court of Appeals
Sixth Circuit.

June 10, 1959.

Lionel Kestenbaum, Dept. of Justice, Washington, D. C., and George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Washington, D. C., John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., on the brief, for appellant.

Sidney Davis, Clinton, Tenn., for appellee.

Before MARTIN, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MARTIN, Chief Judge.

This action, brought under the Federal Tort Claims Act, presents unusual circumstances. A fourteen-year-old girl sued the United States for damages for personal injuries resulting from the gross negligence of her father, in whose automobile she was riding, when he attempted to elude police officers who had placed him under arrest for a misdemeanor. Plaintiff's father is now in the State Penitentiary serving a sentence on a charge of manslaughter for killing a passenger in an automobile with which he collided head-on while attempting to escape. The suit was brought by the child's mother as next friend.

The case was tried by the United States District Judge without the intervention of a jury and resulted in an award by the court to the plaintiff-appellee of damages in the amount of $4,700. The United States has appealed from the judgment.

Under the Federal Tort Claims Act [U.S.C.A. Title 28, § 1346(b)], the United States is liable to a claimant for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Accordingly, the law of Tennessee governs.

Admittedly, at the time of the occurrence, the patrolmen were acting within the scope of their office or employment.

After summarizing the facts, the United States District Judge found that the officers breached their duty to the appellee by chasing her father under conditions shown in the record; and that, as the proximate result of such breach, she had sustained the personal injuries which furnished the basis of her cause of action.

The district court cited State ex rel. v. National Surety Co. and Bragg, 162 Tenn. 547, 555, 556, 39 S.W.2d 581, 584, wherein it was said: "Exercise of the power of arrest for misdemeanor in such manner as to be directly perilous to human life is not authorized by law. 'It cannot be assumed by arresting officers that the power of life or death over persons accused or suspected of misdemeanor has been extended to them; and they have no right to sacrifice human life or to shed blood to prevent the escape of petty offenders.' Human v. Goodman, 159 Tenn. 241, 244, 18 S.W.2d 381. *This language was used in condemning the act of an officer in shooting a misdemeanant to prevent his escape.* It is equally applicable to the arrest of an injured person, obviously in need of immediate medical or surgical attention, when the offense charged is a petty misdemeanor, and the effect of the arrest is to prevent the administration of medical aid without which it is apparent his life will be endangered." [Emphasis supplied.]

In the instant case, there was no shooting by the officers, nor was there any implied threat that they would shoot to prevent the escape. Moreover, in the case cited, the arrested person died as the result of being deprived by the officers of needed medical attention. When arrested, the injured man "was lying prostrate * * * obviously suffering great agony." Neighbors and passers-by were preparing to take him to a hospital.

The district court cited also Human v. Goodman, 159 Tenn. 241, 18 S.W.2d 381, another case where a deputy sheriff shot a fugitive misdemeanant when the officer was unable to overtake him.

Another Tennessee authority, Love v. Bass, 145 Tenn. 522, 523, 238 S.W. 94, declares that an officer may not kill a felon either to capture him or to prevent his escape if with diligence and caution he might otherwise be taken or held. In an earlier case, Reneau v. State, 70 Tenn. 720, the court stated that, in order to prevent the escape of one who has committed a felony, an officer of the law will be excused from killing him, if he cannot be otherwise taken.

In Johnson v. State, 173 Tenn. 134, 114 S.W.2d 819, the highest Tennessee court held that a statute authorizing an officer to use all necessary means to effect an arrest did not authorize the use of firearms to prevent the escape of a person committing a misdemeanor. In our opinion, the Tennessee authorities do not support the conclusion reached by the district judge. In the circumstances of the case, we think his judgment is clearly erroneous and should be reversed.

A brief summary of the facts is essential.

 Around half past three o'clock in the afternoon, the young plaintiff-appellee, Sybil Hutchins, arrived home from school in Oak Ridge, Tennessee. She soon left home with her father, Richard Hutchins, who intended to drive to Knoxville to register his automobile. On their way, he stopped at a service station where he remained for a while and apparently drank some alcoholic beverage. When travel was resumed, the automobile was driven in the direction of an Atomic Energy installation.

When the Hutchins' automobile stopped for a traffic light at a road intersection, two patrolmen, Boyd and Miller, observed that Hutchins permitted his car to "inch" into the intersection while the traffic light was still red. These two men, deputy sheriffs of Anderson County, were employees of a governmental agency, the Atomic Energy Commission. After the traffic light changed, the officers followed Hutchins and saw that his car first veered off the highway and then crossed over the center line.

After Hutchins had made a turn into "Bethel Valley Road", the two patrolmen signaled him to stop and required him to pull off the highway. He obeyed the officers who determined, when conversing with him, that he was under the influence of an intoxicant. Both detected the odor of alcohol on his breath. They demanded that he produce his driver's license, which he could not do. Thereupon, he was informed that he might be charged with driving while intoxicated and with failing to possess a driver's license. The police told him, however, that it would be necessary for them to contact their superior officer for instructions.

Hutchins, apparently obedient, walked over with them to their automobile, from which Officer Boyd put in a radio message to his superior officer. While both patrolmen were in or nearby their patrol car and while Officer Miller was engaged in a second radio call, Hutchins unobtrusively walked back to his own car, in which his daughter was sitting, and drove away without leave. Both officers testified that Hutchins walked in a normal manner, talked coherently, and was seemingly cooperative. Neither regarded it as necessary to restrain him physically or to take his automobile keys from him.

When Officers Boyd and Miller saw Hutchins drive off, they pursued him in their patrol car. The red blinker light on top of the patrol car was flashing and the siren was being sounded during the chase of more than a mile and a quarter. At an intersection of the Bethel Valley Road with Highway 62, the car driven by Hutchins crossed over the center line of the intersection. It first struck a Mercury automobile and then collided with a Chevrolet in such manner as to cause fatal injuries to one of its occupants. As previously stated, Hutchins, on account of the occurrence, was con-

victed of manslaughter and is now confined in the State Penitentiary. He was not called as a witness and did not testify in the instant civil action.

There was a conflict in the evidence as to what occurred at the intersection. The plaintiff-appellee said that her father had stopped his car at the road crossing and that the officers in the pursuit car made motions to him to drive on in spite of her efforts to point out to them that something was wrong with her father. Both denied that any such motions were made by either of them and they also denied seeing the child signal. Officer Boyd stated that the young girl held a Coca Cola bottle in her left hand and was munching crackers. There was no testimony to indicate that Hutchins was dangerously inebriated. Both officers swore that he was under the influence of alcohol; but that, in their opinion, he showed no sign of intending to cause trouble.

The trial court accepted the theory that the patrolmen were negligent in pursuing Hutchins, with the aid of a siren and a flashing red light, when they knew that he was under the influence of alcohol. In our view, this was an erroneous conclusion. In the enforcement of the law of Tennessee, the officers had the duty to pursue traffic law violators, or persons fleeing arrest.

The direct and proximate cause of injury to his daughter was obviously the utter disregard by Hutchins of due care in driving his automobile. The officers would have been derelict in their duty had they not pursued the escapee in the reasonable manner in which they did pursue him. An illustrative case of this principle is found in the opinion of the Court of Appeals of Kentucky. In Chambers v. Ideal Pure Milk Co., 1952, 245 S.W.2d 589, that court held that the action of police in chasing a suspect was not the proximate cause of his crashing into a milk wagon; and that, in the circumstances of the case, there should have been a directed verdict for the officers.

The judgment of the United States District Court is reversed; and the cause is remanded for a new trial.