■ Claire F. Stanton, as Administratrix of the Estate of Nathan L. Stanton, Deceased, Appellant, v. State of New York, Respondent. (Claim No. 41420.) — Staley, Jr., J. Appeal by claimant from a judgment of the Court of Claims which dismissed her claim against the State. On July 1, 1961 at about 12:45 A.M., one Thomas Hayden was observed driving a 1960 white station wagon in a southerly direction in the northbound passing lane of Route 17, known as the Quickway, between Liberty and Monticello, in the County of Sullivan by Trooper R. W. Radloff of the New York State Police, who was patrolling Route 17 in a northerly direction. Hayden disregarded Trooper Radloff's signals to stop whereupon the trooper turned his patrol car around and proceeded after Hayden. He succeeded in stopping Hayden after traveling about a half mile, and parked his patrol car about 10 feet to the rear of the station wagon, leaving his red flasher light on, and training his spotlight on the station wagon. The trooper then approached the station wagon and ordered Hayden to pull it off the highway and onto the grass mall which divided the north and southbound lanes of Route 17. At that time, having observed several vehicles approaching them, Trooper Radloff walked away from the Hayden vehicle to warn and direct the oncoming vehicles with his flashlight. Hayden pulled his vehicle off the highway onto the grass mall to a point about 40 feet from the trooper when he suddenly took off in a southbound direction in the northbound passing lane. Trooper Radloff went back to his patrol car and again began his pursuit of Hayden. He immediately radioed his barracks advising them of the pursuit, and requested information as to whether or not the Hayden vehicle was listed as stolen. When he started after Hayden, the trooper turned off all his lights in the expectation that Hayden would think he was not being pursued and would cross over into the southbound lane; turn around in the northbound lane; or slow down and pull off the road. At this time the road was visible for some distance and there were no oncoming vehicles. The Hayden vehicle was accelerating rapidly, and when it became apparent that Hayden was going to continue south in the northbound lane, Trooper Radloff turned on his headlights, flashing red light and spotlight. During the chase, speeds reached up to 100 miles per hour and the trooper used his spotlight by moving it from side to side to warn oncoming vehicles. At one point he was able to get in front of Hayden and commenced slowing him down by moving from side to side. This maneuver failed, however, when an oncoming car required the trooper to remain in the right hand or passing lane at which time Hayden passed him, moved back into the passing lane in front of the trooper and again began to increase his speed. Both cars then approached a generally straight and level stretch of the highway where visibility was good. On this stretch of the road a vehicle operated by one Gendler was traveling in the northbound passing lane. Gendler observed the trooper's warning signals and moved into the right hand driving lane. Hayden, however, began moving to his left and sideswiped the left of the Gendler vehicle. This impact caused the Hayden vehicle to go into a skid and it continued southerly down the highway sideways to a point where it was in collision with the automobile being operated by claimant's intestate in the passing lane. The claim is based upon the alleged negligence of the State Police in failing to take Hayden into custody after he had been stopped and/or in permitting him to escape and the pursuing him at a high rate of speed in a southerly direction in the northbound lane of Route 17. In order to establish liability against the State for the injury and death of claimant's intestate, the claimant must prove the negligence of the State, and further prove that such negligence was the proximate cause of the injury and

resulting death. In determining the proximate cause, duty and foreseeability are the guidelines to be considered. (*Williams* v. *State of New York,* 308 N. Y. 548.) Here, nothing in Hayden's actions or demeanor gave any indication to Trooper Radloff that he was likely to disobey his order to pull off the highway onto the grass, and it was reasonable for the trooper to expect that Hayden, having once stopped, would comply with the order. Under these circumstances, it was also reasonable for the trooper to then direct his attention to the safety of oncoming motorists and direct them around the obstruction in the passing lane of the highway. Thus viewed, the alleged failure of Trooper Radloff to remove the ignition key from the Hayden vehicle was not the proximate cause of the accident. (*Granger* v. *State of New York* 14 A D 2d 645.) It is also claimed that the pursuit by the trooper at high speed against traffic was negligence on the part of the trooper and the proximate cause of the accident. In this regard two factors must be considered, Hayden's flight and Trooper Radloff's pursuit. Negligence on the part of the State cannot be predicated on any acts of Hayden in his flight to avoid apprehension. Negligence, if any, must be predicated on the actions of Trooper Radloff in pursuing Hayden. A driver of a police patrol car when in pursuit of an actual or suspected violator may exceed the maximum speed limits and may disregard regulations governing directions of movement or turning in specified directions, as long as he does not endanger life or property. (Vehicle and Traffic Law, § 1104.) Subdivision (b) of section 1104 provides in part that: " (b) The driver of an authorized emergency vehicle may: \* \* \* 3. Exceed the maximum speed limits so long as he does not endanger life or property; 4. Disregard regulations governing directions or movement or turning in specified directions." Subdivision (d) of section 1104 provides that: " (d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." Claimant's argument that Trooper Radloff should have pursued Hayden in the southbound lane of Route 17 necessarily fails in the face of this statutory authority to disregard directions of movement when in pursuit of an actual violator. Examining the manner in which Trooper Radloff operated his patrol car and considering his use of the siren, flashing light, and spotlight to warn oncoming motorists, he did in fact drive with due regard for the safety of all persons using the highway. Likewise claimant's argument that Trooper Radloff was not authorized under the circumstances of this case to exceed the speed limit must fail. With regard to the speeds at which the trooper drove, the standards were elicited by the claimant from her own expert who stated: " Finally, the police officer is not to desist; he is to follow this fleeing vehicle in as safe a manner as possible." The statutory requirement of section 1104 of the Vehicle and Traffic Law that the operator of an emergency vehicle should have " due regard for the safety of all persons " and the imposition of responsibility for " the consequences of his reckless disregard of the safety of others " are not such as to require compliance with the generally accepted definition of negligence. The immunity afforded the driver of an emergency vehicle from the regulations governing speed and direction of travel can only be denied when there is evidence of an exercise of these privileges in excess of reasonableness under the circumstances which the trial court did not find here. (*Murphy* v. *City of New York,* 16 A D 2d 678; *Christie* v. *Mitchell,* 10 A D 2d 52; *People* v. *Bisig,* 46 Misc 2d 299; *Wrubel* v. *State of New York,* 11 Misc 2d 878; *Torres* v. *City of Los Angeles,* 58 Cal. 2d 35.) The majority view expressed in other jurisdictions in similar cases holds that a police officer is not liable for damage caused by a vehicle being pursued by the officer in the performance of his

duties. (83 ALR 2d 452; *Pagels* v. *City and County of San Francisco,* 135 Cal. App. 2d 152; *Draper* v. *City of Los Angeles,* 91 Cal. App. 2d 315; *United States* v. *Hutchins,* 268 F. 2d 69; *Roll* v. *Timberman,* 94 N. J. Super, 530; *Chambers* v. *Ideal Pure Milk Co.,* 245 S.W. 2d 589 [Ky.].) In the case of *Roll* v. *Timberman* (*supra,* p. 536), with facts similar to the case here, the court stated as follows: " The reasoning which underlies the rejection of liability in these cases is two-fold: (1) it is the duty of a police officer to apprehend those whose reckless driving makes use of the highway dangerous to others; (2) the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving." The trooper here was confronted with two standards of duty; first, was his obligation to apprehend the traffic violator and prevent him from doing any harm to innocent users of the highway, and secondly, was his obligation to conduct his pursuit of the traffic violator in a manner that was neither careless, reckless, nor wanton. In the case of *Wrubel* v. *State of New York* (11 Misc 2d 878, 879, 880, *supra*), the claimant was injured in a collision between an automobile operated by the claimant and an automobile that was being pursued as a traffic violator by a State trooper. The court, dismissing the claim stated as follows: " Distilled to its essence, the case presents one question: Is the State liable for the damage occasioned by a fleeing lawbreaker while being pursued by a State trooper who was performing his duty? We do not believe so under the circumstances here. In the presence of a violation of law it is the officer's duty to take steps to suppress the offense and apprehend the offender. * * * Claimant's predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed, a lawbreaker traveling at an unlawful rate of speed, or to ignore him in the first place. * * * A police officer has a right to use whatever means necessary to make an arrest and unless he exceeds proper and rational bounds or acts in a negligent, careless or wanton manner he is not liable for damages sustained, even by innocent parties, under the circumstances that arose herein. We think the action of the trooper was proper. The contention of claimants is unsound." Considering the entire record, it is our opinion that it was not the manner in which Trooper Radloff drove his patrol car which was the proximate cause of this accident, but rather the manner in which Hayden drove his vehicle which was the proximate cause. Trooper Radloff's actions were merely those of a police officer performing his duty in an emergency situation. He was neither careless nor reckless and acted in as prudent and careful a manner as possible under the circumstances. His actions must be weighed in the light of the circumstances as they developed and not by subsequent facts or in retrospect. If we were to adopt the claimant's theory that a trooper in attempting to remove a danger on the highway acts negligently by increasing the danger when he exceeds the speed limit in the pursuit of a wrongdoer, police officers would be reluctant to act in such emergency situations with the result that the public would be deprived of proper and adequate protection against such violators. (*Wrubel* v. *State of New York, supra.*) The alleged evidentiary errors of the trial court were not so material nor prejudicial to require reversal, assuming error was committed. Judgment affirmed, without costs. Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum by Staley, Jr., J. Gibson, P. J., and Gabrielli, J. dissent and vote for reversal and a new trial, in separate memorandums in which both concur, as follows: Gibson, P. J. (dissenting): There can, of course, be no quarrel with the majority's restatement of the well-established, if not elementary rules gov-

erning the pursuit of miscreants generally; but the generalizations in which the majority conclusions are expressed seem to me to obscure the critical, clear and narrow issue which the record presents and the majority discussion avoids. The issue is, in my view, whether there came a time, after the pursuit had been resumed following the abortive arrest, and after Hayden had failed to stop as the trooper drew abreast of him, when the trooper: (1) Should have recognized that the continued headlong course of the two cars was charted toward inevitable and probably fatal disaster, the cars traveling, as they were, at speeds approaching or exceeding 100 miles per hour, on the wrong side of a divided, high-speed nonaccess highway, and at times occupying both lanes; and (2) should have then considered whether his high-speed pursuit was not acting upon the obviously aberrant mind of the pursued driver as, in some part at least, the impetus and propellant of the latter's extreme speed and grossly reckless operation. Hayden was proceeding at about 45 to 50 miles per hour when the trooper first observed him but at twice that speed when the accident occurred. It can reasonably be argued, of course, that an accident might still have occurred had the trooper desisted or moved to the other side of the divider mall, but it can as fairly be said that it was virtually certain to occur if he continued on the same course. To the extent that the trooper's high-speed pursuit, in the wrong direction on the northbound lanes, beyond the point at which it became clear that Hayden was not going to stop voluntarily, may have impelled and aggravated the latter's reckless, death-dealing operation, it could be found, to that same extent, a proximate cause of the readily foreseeable collisions. Whether or not the trooper could have effectively pursued Hayden and at the same time have warned northbound traffic by crossing to, and proceeding southerly upon the southbound lane, could not, perhaps, have been determined upon this record. Neither is the proof helpful as respects the establishment and efficacy of the roadblock ordered by the trooper's headquarters. The answers, however, would not necessarily be decisive of the central issue. The trooper was not bound to continue the pursuit at all costs; and the apprehension of Hayden was not, or should not have been, his sole, or even his paramount concern. He was authorized to exceed maximum speed limits "so long as he [did] not *endanger life*" and he was "not relieve[d] * * * from the duty to drive with due regard for the safety of *all* persons". (Vehicle and Traffic Law, § 1104, subd. [b], par. 3; subd. [d] emphasis supplied.) Claimant was to some extent foreclosed by rulings of the trial court from a full development of this unusual and difficult case; and, in the interests of justice, a new trial should be had. I vote to reverse. Gabrielli, J. (dissenting). I vote to reverse and, in the interests of justice, for a new trial. The record clearly reveals that after Trooper Radloff had first apprehended Hayden, a second "chase" ensued during which their two vehicles travelled at speeds of 100 miles per hour or more, and during which time the two cars, traveling south on the northbound lanes, were at times abreast of each other; and of compelling interest, it further shows that the cars remained abreast of each other until a few seconds before the collision, when the trooper returned to the northbound passing lane only a moment before the fatal collision, all of which obviously confused the operator of the death car, resulting in the actions of the trooper being proximate causes of the accident. It would further appear that none of this was necessary in view of the fact that the trooper had made arrangements with the Monticello police department for a road block to be set up a short distance south of the occurrence and other troopers had been alerted who were preparing to travel north from the Wurtsboro State Police barracks to intercept Hayden. Concededly, Hayden's actions were certainly proximate causes of the accident which, as here, would not extinguish the liability of the State as the trooper's actions were likewise proximate causes

of the occurrence. Reference by the majority to the theories expressed in the so-called "pursuit" cases is inappropriate to the factual situation in this case; and their reliance upon the provisions of section 1104 of the Vehicle and Traffic Law cannot form a basis for the avoidance of liability upon the part of the State. This section which permits exemption of the operator of emergency vehicles from certain speeding and other operating restrictions, provides that such exemption shall exist only "so long as he does not endanger life or property" (Vehicle and Traffic Law, § 1104, subd. [b], par. 3) and further mandates in subdivision (d) thereof that the exemption "provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the *safety of all persons*" (emphasis supplied). The ultimate occurrence resulted in part from the actions of the pursuer in a most unusual situation with two vehicles traveling south at high speeds on northbound lanes at night on a holiday weekend when, in fact, the rational foreseeable conclusion to be reached was that such continued actions would result in injury. Such a result being foreseeable in light of the risks to be perceived, his acts were those of an intervening nature which could, under these facts, impose liability.