OPINION OF THE COURT
Philip J. Patti, J.
This claim arose from a motor vehicle accident in which one Charles Walker, admittedly speeding and having consumed *875 alcohol, caused a collision with the vehicle which claimant was driving. The essence of claimant’s theory of liability is the alleged failure of state troopers to have taken steps to stop the Walker vehicle prior to the collision.
The defendant has moved first, seeking summary judgment dismissing the claim and the claimant has made a cross motion seeking summary judgment on her behalf.
On first blush, this claim raises issues that are the converse of the typical claim in such instances. More typically there are allegations that the State Police have acted recklessly or precipitously in engaging in motor vehicle pursuits, high-speed or otherwise, and that such police action proximately caused a subsequent motor vehicle accident with some otherwise innocent individual being injured or killed.
But here the allegations of negligence rely upon a theory that the State Police failed to act when they purportedly should have acted, to wit, when they were “duty-bound” to have acted (Saarinen v Kerr, 84 NY2d 494, 502 [1994]). The ultimate decision which I must make is whether such a duty existed, and, if so, whether there was a breach of that duty and whether it extended to the claimant. Based upon my analysis below, I find that the State of New York may not be held answerable in damages for the injuries sustained by claimant through no fault of her own. Her remedies, if any remain, are rooted solely in the culpable conduct of Charles Walker.
In analyzing the instant motions, I remain keenly aware of the fine fine that must be balanced by those entrusted with the responsibility of public safety and my unpressured opportunity to contemplatively examine and assess field determinations made by police officers in real time events. This is a daunting responsibility which I do not take lightly.
The underlying events are little in dispute, and a recitation of the salient facts will be beneficial. The accident here occurred in the early morning hours of March 1, 2002, at approximately 1:25 a.m. at the intersection of Scottsville Road, Elmwood Avenue and Genesee Street in the City of Rochester. The Walker vehicle was traveling at an excessive rate of speed northbound on Scottsville Road as the road curved to the east, when he failed to negotiate the turn to Elmwood Avenue, and struck the claimant’s vehicle which was in the right-hand lane of Elmwood Avenue heading west at the intersection which was controlled by a signal light.
The events preceding the crash are also little in dispute. Just a few minutes before the accident, State Troopers Blum and *876 Ball were in a State Police vehicle at a traffic signal in the left-hand lane of Route 15 north (Mount Hope Avenue) at the entrance to Route 390 north. Walker was heading southbound on Mount Hope Avenue and made a right-hand turn onto the entrance to Route 390 north, at a rate of speed estimated by the troopers to be approximately 50 miles per hour (mph), when the speed limit was 30 mph. The troopers ascertained at that time that they intended to issue a traffic citation for speeding to the Walker vehicle. They made a left turn and proceeded onto the entrance to Route 390 behind the Walker vehicle, but by the time they had entered onto the highway itself, the Walker vehicle had accelerated at a much higher rate of speed and the troopers found themselves a greater distance behind the Walker vehicle than they expected, estimated by Trooper Blum to be one half of a mile. The troopers accelerated in an attempt to close the gap, but even accelerating to their vehicle’s maximum speed of 118 mph, they could barely keep up with the Walker vehicle, and could not close the gap. Trooper Ball estimated that the two vehicles were both traveling at speeds in excess of 100 mph for a distance of about one mile. The Walker vehicle then abruptly exited Route 390 at the Scottsville Road exit, having to slow its speed significantly to negotiate the exit ramp. The police vehicle closed the gap somewhat at that time, but then had to brake abruptly itself in order to safely exit the highway, thus allowing the gap to the Walker vehicle to lengthen once again. Walker drove to the end of the exit ramp, at a “T” intersection with Scottsville Road, and, going through a red light, made a left-hand turn, accelerating to approximately 70 or more mph[1] over a distance of about four tenths of a mile where he found himself unable to negotiate the curve to the east toward Elm-wood Avenue and crashed into the claimant’s vehicle. The troopers followed Walker onto Scottsville Road northbound and were now perhaps 100 to 150 yards behind Walker. As Walker began heading into a residential area in the City of Rochester, and as the troopers realized that he would be unable to negotiate the curve at the upcoming intersection, they initiated a call to the Monroe County Office of Emergency Communications (OEC) seeking the assistance of the Rochester Police Department at 1:28:11 a.m. and for the first time turned on their emergency lights and sirens, somewhat contemporaneously with the crash, which they were able to observe from their vehicle.
*877 At no time during the sequence of events described above did the troopers initiate a formal pursuit of Walker, primarily because, as they testified, they were unable to get close enough to his vehicle to provide identifying information such as make, model, license plate number or the number of occupants. They did however trail, follow, and attempt to get close enough to the Walker vehicle to be able to initiate a formal pursuit, and it was only when they were on the four tenths of a mile stretch of Scottsville Road, traveling at about 70 mph, that they engaged their emergency lights and sirens.[2] Vehicle and Traffic Law § 1104 (b) (2) permits the drivers of “authorized emergency vehicles”[3] to disregard, within enumerated limits, certain rules of the road (Criscione v City of New York, 97 NY2d 152, 156 [2001]; Riley v County of Broome, 95 NY2d 455, 462 [2000]), albeit only if the emergency vehicle is sounding a bell, horn or siren, and displaying at least one light visible from 500 feet away (Vehicle and Traffic Law § 1104 [c]). The statute specifically excludes police vehicles from these requirements. Said another way, drivers of police vehicles, regardless of whether sirens and emergency lights are operating, are protected by the statute, unless their conduct amounts to “reckless disregard” of the safety of others (Vehicle and Traffic Law § 1104 [e]).
Walker has testified under oath, and claimant concedes, or at least raises no question of fact, that he at no time was aware of any police activity and was totally unaware that they were following him, averring that he was not attempting to evade them at any time. Indeed there is no plausible reason I can fathom for Walker to fabricate his answer to this question, and I accept it as truthful.
It comes as no surprise that Walker, who was initially charged with 18 separate traffic violations and in satisfaction of all charges pleaded guilty to two of them,[4] had consumed numerous alcoholic beverages and smoked marihuana that evening.
It is the failure of the troopers to have initiated a formal pursuit that claimant urges was a breach of their duty, evincing *878 a reckless disregard for the safety of others,[5] suggesting that, had such flashing emergency lights and sirens been activated earlier, perhaps Walker would have complied and pulled over. Claimant also supplies the affidavit of one Salvatore Valvo, a retiree of the New York State Police, who, inter alia, alleges that there was a formal pursuit starting at about 1:25 a.m. on March 1, 2002, relying in part upon a New York State Police File 3 teletype message number 01095, dispatched at approximately 5:04 a.m. (Volvo affidavit para 12) from “SP Rochester to SP Albany . . . describing the pursuit of the Walker vehicle” (id. para 13). Thus, Valvo concludes that the troopers following Walker were indeed involved in a high-speed pursuit which warranted the utilization of flashing lights and sirens, and the failure to have done so was reckless behavior. Valvo further concludes that had such emergency lights and sirens been activated “there was a reasonable expectation that the Claimant would have heard the emergency warnings and seen the emergency lights which could have alerted her to an emergency situation and the Claimant could have taken evasive maneuvers to avoid the collision at the intersection.”
These conclusions are troubling and raise numerous questions for me, and clearly did so for the defendant. Before addressing my own concerns, I note that the defendant supplies the affidavit of Sergeant Richard Doucette, the Division Safety Officer for the New York State Police, who disputes the Valvo application of article 30-B2 of the New York State Police Field Manual, specifically the section entitled “Pursuit Driving.”[6] Doucette quotes the manual’s definition of a “vehicular pursuit” as: “Vehicular Pursuit—an active attempt by a Member in a Division vehicle to apprehend a fleeing subject in a motor vehicle who is knowingly attempting to avoid apprehension. The Member must have a reasonable belief that the subject is aware of the Member’s attempt to stop the vehicle” (emphasis supplied).
The undisputed facts before me, relying upon the unequivocal statements of Walker on at least two occasions while under oath, preclude application of this definition, and thus eviscerate the conclusory application of the protocols upon which Valvo relied in rendering his findings and opinions. Walker testified that he did not know he was being followed by anyone, includ *879 ing law enforcement officers. Accordingly, he could not have been knowingly attempting to avoid apprehension, and thus the undisputed facts before me establish that there was no “vehicular pursuit” as defined in the State Police manual.
Doucette also addresses the implications of the teletype message sent some 3V2 hours after the incident, noting that “a ‘File 3’ teletype message does not determine whether Troopers engaged in a ‘vehicular pursuit’ within the meaning of Article 30B2, it is the initiation of an investigation” (Doucette affidavit para 15). He further distinguishes use of the phrase “Pursuit/ PIAA” as not implicating a formal “vehicular pursuit” and reiterates that a “File 3” only indicates that an investigation was initiated. Needless to say, Doucette’s opinions regarding whether the troopers’ actions were consistent with good and accepted police practices and whether they were “reckless” are the opposite of Valvo’s. Thus we have the diametrically opposed opinions of two individuals, each with significant experience in this area.
Here I find that the facts support the opinions offered by the State, and not those proffered by the claimant. Furthermore, I was troubled by other conclusions and opinions rendered by Valvo, in particular, his “finding” that Troopers Ball and Blum “acted recklessly, unreasonably, negligently and grossly inconsistent with professional police standards, practices and procedures” (Volvo affidavit para 7).[7] In the first instance, he persists in denominating the events as a pursuit, using a term of art in police jargon, despite his knowledge and awareness that neither trooper had “called in” a pursuit, then expresses opinions based upon his own questionable conclusions. I find that Valvo’s deliberate use of the term “pursuit” is erroneous, inaccurate and provocative.
Moreover, Mr. Valvo avers that the incident covered “a considerable distance,” although he does not quantify what he deems to be “considerable.” He does not attempt to measure the distance covered or the period of time which elapsed from the first moment the troopers observed Walker until the crash. Using the only data in evidence before me, to wit, the affidavits of the troopers noting that they first observed Walker at about 1:25 a.m., and the records showing the phone call to OEC at 1:28:11 (essentially contemporaneous with the crash), it appears *880 this entire episode consumed some three minutes. Given the events as they unfolded and as described above, I question Valve’s professional opinion that “it appears that Troopers Ball and Blum were waiting to see the number of vehicle and traffic violations Charles Walker would commit before they attempted to stop him” (Volvo affidavit para 9). Such an opinion makes their actions sound like they engaged in a game or contest, a conclusion that to me is wholly unwarranted from the facts, and frankly diminishes the value of his other opinions.
This unsupported hypothesis led claimant’s counsel to propound that “[f]rom the evidence before this Court, it appears that Troopers Ball and Blum put their own personal interests ahead of the public interest when they failed to take any measures to stop the forward progress of the Walker vehicle” (claimant’s mem of law at 11). There is no “evidence” to support this theory beyond the opinion of Valvo, and that opinion is based upon speculation and surmise, and there is not a scintilla of proof to support what I believe to be a highly questionable opinion. Of course, claimant has the burden of trying to demonstrate that the troopers acted in reckless disregard for the safety of others (Vehicle and Traffic Law § 1104 [e]). But to imply such self-indulgent motives from gossamer allegations regarding an event that spontaneously appeared before these officers in the middle of the night over a period of perhaps three minutes and a distance of just a few miles at speeds ranging from 50 mph (at the entrance to Route 390) to over 118 mph (on Route 390) to 70 to 80 mph (on Scottsville Road) is unbridled speculation.
While I realize that Mr. Valvo has a lengthy history as an employee of the New York State Police, and many of his opinions rest upon speculative notions of what might have occurred had the sirens and emergency lights been activated earlier in this three or so minute event, it is his lack of consideration of other factors on aspects of his opinions that also concerns me. For example, and indeed this provides the basis for that portion of claimant’s theory that the sirens and emergency lights would have provided notice to the claimant to allow her to perhaps move her vehicle out of harm’s way, he opines that “there was a reasonable expectation that the Claimant would have heard the emergency warnings and seen the emergency lights which could have alerted her to an emergency situation and [she] could have taken evasive maneuvers to avoid the collision at the intersection.” In expressing such opinion, there is no discussion of the *881 distance between the police vehicle and claimant’s vehicle, the fact that Walker was between 100 to 150 yards and one-quarter mile ahead of the troopers on a four tenths of a mile stretch of road that included a curve to the right, or specifically what lines of sight existed and hence the putative visibility of claimant’s vehicle vis-a-vis the troopers’ vehicle. He does not note that claimant testified that her windows were up, that her heater was probably on, that the radio was on (although she testified that the volume had been lowered somewhat), and that she was engaged in a conversation with her passenger, and he does not discuss the distance at which police sirens are audible.
Since claimant is unable to show that Walker was aware that he was being followed, let alone being pursued[8] by the State Police, then she is unable to show that police action was a proximate cause of his unsafe driving. And since the defendant’s actions did not contribute to Walker’s dangerous driving, which was the proximate cause of the accident, claimant is left with the argument that there was a failure of the troopers to provide police protection.
Claimant has not cited a single case where the failure to engage in a formal pursuit has been elevated to conduct rising to the level of recklessness (Vehicle and Traffic Law § 1104 [e]). This standard of recklessness has been interpreted to mean that the officer must have “ ‘intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow’ and has done so with conscious indifference to the outcome” (Saarinen v Kerr, 84 NY2d 494, 501 [1994], supra).[9] She seeks to have me infer liability by converting an act of commission by which liability may be ascribed to make culpable an alleged act of omission, to wit, the failure to have engaged sirens and lights. But “[t]he reasonableness of the officer’s conduct must be gouged as of the time and under the circumstances in *882 which he acted, not in retrospect (see, Stanton v State of New York, 29 AD2d 612, 614, affd 26 NY2d 990, 991)” (Palella v State of New York, 141 AD2d 999, 1000 [1988]). Moreover,
“if a police officer conducting a pursuit uses his best judgment as to the most effective means of dealing with a traffic violator and acts without reckless disregard of the safety of others, no liability will attach to his actions even though hindsight might disclose other means of apprehension which may have been safer. (Stanton v. State of New York, supra; Dunn v. State of New York, 34 A D 2d 267; Thain v. City of New York, 35 A D 2d 545)” (Strobel v State of New York, 36 AD2d 485, 488 [1971]).
This claim hinges on allegations of the State Police’s failure to have provided police protection to claimant, and it is on this basis that the claim fails. The law in this area of municipal liability is clear and undisputed and requires a special relationship between the injured person and the police.
“A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation” (Pelaez v Seide, 2 NY3d 186, 199-200 [2004]).
Claimant, not surprisingly, totally avoids addressing this issue or topic. I will simply resolve the obvious. Liability cannot be premised on the failure of the State Police to act, to wit, the failure to provide police protection, because an essential predicate before holding the State answerable in damages is the undisputed absence of any relationship between the defendant and the claimant. There was none, and thus there could be no detrimental reliance by claimant, and no liability.
Claimant’s arguments in this regard, to wit, that the use of sirens and flashing lights might have persuaded Walker to pull his car over, or that they might have forewarned claimant at the intersection when Walker drove into her vehicle, so that she might have taken some sort of evasive action, encompass the public as a whole. There can be no creative or expansive reading of the claim, its allegations, or the undisputed facts that could possibly transform the tragic events of this incident into anything more than an argument that the State Police allegedly failed to provide police protection to claimant.
*883 It would be of no avail to claimant even were I to conclude that there was mere negligence, as opposed to the more difficult to prove reckless disregard for the safety of others, in the troopers’ failure to have engaged the sirens and emergency lights as soon as the Walker vehicle made the left turn onto Scottsville Road and started heading toward a residential area of the City of Rochester, and waiting another 18 to 20 seconds until the accident was imminent. In either case, claimant is still required to demonstrate that there was a special relationship between her and the State Police, and she has failed to do that.
In the cases which claimant has cited, the consistent theme is the alleged negligent action by the police personnel in using sirens and emergency lights and having the pursued driver then cause an accident with another vehicle or pedestrian, and/or the police vehicle itself had the accident with another vehicle or pedestrian. But in no case provided to me by the claimant or the defendant, or through my own research, was I able to find a scenario where allegedly negligent police inaction was found to be the proximate cause of any injury to a third person, in the absence of a special relationship between the victim and the police authority. There is no way to read the claim before me, denuded of all the semantics and trappings, as anything more than an attempt to imply negligence from the alleged failure to provide police protection. The circumstances where the failure to provide police protection leads to a finding of liability have been recently revisited by the Court of Appeals in Pelaez v Seide (2 NY3d 186, 198-199 [2004], supra):
“As we noted in Lauer v City of New York (95 NY2d 95, 99 [2000]), ‘[a] public employee’s discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality’s liability even when the conduct is negligent.’ To impose liability, there must be a duty that runs from the municipality to the plaintiff. We have recognized a narrow class of cases in which a duty is born of a special relationship between the plaintiff and the governmental entity. When such a relationship is shown—and it is plaintiff’s burden to establish it—the government is under a duty to exercise reasonable care toward the plaintiff (see Garrett v Holiday Inns, 58 NY2d 253, 261 [1983]).”
The Pelaez court summarized its ruling (at 205-206):
“In the special relationship cases we are generally asked to impose liability on the government because *884 it failed to prevent the acts of third persons who are the primary wrongdoers. This involves a form of secondary liability which we have restricted, out of respect for the public treasury. While, on occasion, the government’s failure to act is so severe as to render it liable, no government could possibly exist if was made answerable in damages whenever it could have done better to protect someone from another person’s misconduct.”
I am unprepared to travel down the road proposed by claimant, and create new law whereby municipal liability is expanded to include the failure to provide police protection to the public in general. Taken perhaps to an extreme, and perhaps not fully able to be analogized, would the victims of the September 11th terrorist attacks have causes of action against the federal government for the negligent failure to have protected them from harm because the government had had prior notice that terrorist activity was afoot, premising negligence of the failure to have acted upon previously known intelligence information? Assuredly, those victims, as members of the general public, just as claimant here is a member of the general public, having no special relationship with the governmental entity involved, may not successfully pursue claims for damages.
The State’s motion for summary judgment dismissing the claim must be granted, and the claimant’s cross motion must be denied. Claims of this sort, where an individual is seriously injured through no fault of her own, evoke great sympathy, as one’s instincts naturally empathize with an innocent victim. But claimant’s only recourse is legal action against the only culpable party, Walker, and not the State of New York. The claim is dismissed.

. Trooper Ball estimated Walker’s speed on Scottsville Road at being in the 75 to 80 mph range.

. My calculations show that it would take a vehicle traveling four tenths of a mile at 70 to 80 mph a period of 20.57 to 18.05 seconds, respectively, to traverse the entire distance. The troopers testified that they were directly behind the Walker vehicle on Scottsville Road for perhaps a second or two before they engaged their emergency lights and sirens.

. Including all police vehicles (Vehicle and Traffic Law § 101).

. Attempted reckless endangerment in the first degree and driving while his ability to do so was impaired by the use of alcohol.

. Vehicle and Traffic Law § 1104 (e).

. Valvo avers, without dispute, that he was coauthor of this section of the manual.

. Query whether such opinion improperly usurps the role of the court concerning an issue of law (see, Smelts v Meloni, Sup Ct, Monroe County, Feb. 18, 2005, Cornelius, J., Index No. 01/4966, slip op at 15).

. “I was not attempting to evade police, nor was I even aware that they were following me prior to me being involved in [the] motor vehicle accident” (Walker’s deposition, exhibit D to the motion papers, at 40-41).

. Claimant is hamstrung because she cannot acknowledge that the troopers actually might have engaged in serious contemplation and discussion of how to proceed, and can only attack the decisions they did make, to wit, not to engage sirens or emergency lights until they got closer to the Walker vehicle and they entered a residential area. If claimant acknowledges that the troopers did evaluate the situation and make a conscious decision to wait before engaging lights and sirens, then it would seem that they were exercising professional discretion, and were not acting with the “conscious indifference” articulated in Saarinen v Kerr (84 NY2d 494, 501 [1994], supra).