446 P.2d 925

**Donald R. BURNS, a minor, through his Guardian ad Litem Lewis C. Burns, Appellant.**

v.

**Vinton Earl WHEELER, and Marjorie P. Wheeler, his wife, and Everett R. Boyer, dba Boyer Electric Co., Appellees.**

No. 8576.

Supreme Court of Arizona.

In Division.

Nov. 6, 1968.

Rehearing Denied Dec. 3, 1968.

Charles Christakis, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by John S. Hobbs, Phoenix, for appellee Boyer.

O'Connor, Anderson, Westover, Killingsworth & Beshears, by James H. O'Connor, Phoenix, for appellee Wheeler.

McFARLAND, Chief Justice:

Plaintiff-appellant, Donald R. Burns, hereinafter referred to as Burns, sued defendants-appellees, Vinton Earl Wheeler and Boyer Electric Company, hereinafter referred to as Wheeler and Boyer, respectively, for personal injuries received in a collision between plaintiff's motorcycle and defendant's automobile. The jury found for defendants, and plaintiff appealed.

Most of the facts are clear, but there are some details that are either vague or in dispute. At the trial some of those details may have been clarified by witnesses who stated that the impact took place "here" and the warning flags were "there," etc. While the use of a blackboard or diagram is of great help during a trial, the failure to make clear what "here" and "there" mean, together with the failure to transmit the diagram as part of the record, make it impossible for this Court to be sure of exactly what the witnesses meant by some of the things they said.

The paved portion of Thomas Road, at the place of the accident, was twenty feet wide, and consisted of two ten-foot lanes of traffic—one eastbound and one westbound. Burns, who was fourteen years old, was driving a motorcycle west on that street, with another boy named Rickey Gilbreath seated on the cycle behind him. Wheeler was driving his car east on the same street. North of the street, near the property line, a new Circle K Market was being constructed. The city had made an excavation on the lot in order to lay a pipe to the street, and there were both the hole thus made and a pile of dirt just north of the dirt shoulder on the north edge of the pavement. "Cones" had been placed on the ground both east and west of the dirt pile, and there was also a tripod with warning flags. The exact location of the cones is. not clear, but they appear to have been placed along the north edge of the pavement and were undoubtedly intended to call motorists' attention to the dirt pile and the hole, so that they would avoid the immediate area, protect their vehicles, and watch out for the men working.

Wheeler was an electrician in the employ of Boyer who was doing the electrical work on the new building. Shortly after noon Wheeler was returning from lunch in his own car, on his own time. He was not being paid for the lunch period or for the use of his car. He was driving east on Thomas Road, and it was his intention to make a left turn from the street on to the lot on which the market was being built. He reduced his twenty-mile-an-hour speed to five or ten miles per hour, and gave a hand signal for a left turn. Following behind him were two cars, the second one being driven by a minister named Stevens. As Wheeler slowed down and started to make his turn, he did not see Burns approaching on the motorcycle. He did, however, see a truck backing out from the Circle K lot, and he slowed nearly to a stop, keeping his eyes on the truck to make sure that it would not back into his path. As the car passed nearly across the westbound lane of traffic, the motorcycle hit the right front fender of Wheeler's car, throwing the driver and the passenger from the motorcycle into the air. Wheeler saw them for the first time at the instant.

of impact. Burns's passenger, Gilbreath, never saw the Wheeler car at all, as he was looking at some young female pedestrians. Burns, the driver of the motorcycle, did not see the car until the moment of impact. Both Wheeler's negligence and Burns's contributory negligence were submitted to the jury, which brought in a verdict for defendant.

Prior to giving the case to the jury, the court directed the jury to bring in a verdict for defendant Boyer, and this was done. Burns assigns this as error. The uncontradicted evidence was to the effect that, at the time of the accident, Wheeler was on his lunch hour in his own car at his own expense and during time for which he was not being paid. His employer, Boyer, had no control over his actions at the time. The law is settled in this State that, under such circumstances, travel by the employee is not within the scope of his employment. Butler v. Industrial Commission of Arizona, 50 Ariz. 516, 73 P.2d 703; McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757. It is clear, therefore, that the direction of a verdict in favor of Wheeler's employer, Boyer, was proper.

Burns next assigns as error the failure of the trial court to withdraw the issue of plaintiff's contributory negligence from the jury. Contributory negligence, if any, in this case, must be predicated upon Burns's admission that he did not see Wheeler's car until the instant of impact. From this one might conclude that Burns was negligent in failing to keep a proper look-out toward the road ahead. Burns's argument is that even though he was not looking ahead, his failure to do so had nothing to do with the accident, because even though he had seen Wheeler's car and had kept it in view constantly, Burns could not have avoided the accident. Burns's reasoning is as follows: As the vehicles approached, Burns's motorcycle was in the westbound lane, and Wheeler's car was in the eastbound lane. There was no danger of a collision and no reason to slow down or to

anticipate that Wheeler was going to turn left in front of Burns. By the time Wheeler started his turn he was going about five miles per hour, which is about $7\frac{1}{2}$ feet per second. At the time of the impact, Wheeler's car had traversed three-fourths of the westbound lane (ten feet wide) so that the car's movement over that distance took only one second. At Burns's estimated speed of twenty to thirty miles per hour, he argues, he could not have stopped his motorcycle in one second, so the collision would have occurred anyway.

This argument has several flaws in it, and it ignores all of the contrary evidence. First, it ignores the following testimony of Burns's passenger, Rickey Gilbreath:

"A. We had to slow to go around some cones.

"Q. Now when you went around these cones, did you go around them to the right or to the left?

"A. To the right.

"Q. How far from the North edge of the paved portion of Thomas, were these cones?

"A. They were right on the edge.

"Q. Then they weren't put into the pavement at all?

"A. * * * All I remember is that we went around the cones at the speed of a walk.

"Q. When you went around these cones did you have to go on to the dirt?

"A. Yes, Sir."

If this was a correct statement of fact, then the motorcycle, instead of proceeding along the westbound lane of traffic, went off the paved portion of the street onto the dirt shoulder on the north side of the street, even though the cones did not extend onto the paved portion. The jury could have found this act to be contributory negligence. Furthermore, the witness described the cycle's speed at that point as the "speed of a walk," which is normally about three miles per hour, and would have given the motorcycle driver plenty of time to stop and avoid the accident. Second, it

ignores testimony that Wheeler signaled his intended left turn by holding out his arm for fifty to a hundred feet before starting to turn. Reverend Stevens, following the car behind Wheeler, confirmed this fact. Third, it ignores the fact that flags and cones were placed to warn westbound traffic that men were working ahead. Fourth, it ignores the following question posed by Burns's attorney and answered affirmatively by Wheeler:

"Was it not almost a matter of a *few* *seconds* when you made your turn into the westbound lane and the boys were there. * * *?" [Emphasis ours.]

Fifth, it ignores the following testimony of Reverend Stevens:

"* * * there is a car in front of me and another car in front of that car, that was *stopped* to make a left-hand turn * * * and this car [Wheeler's] that was going to make the turn was waiting * * *" [Emphasis ours.]

When a witness is dealing with seconds and fractions of seconds, it is impossible to time events with perfect accuracy. The presence in the road ahead of the motorcycle of cones, flags, and a car standing or going very slowly and indicating an intention to make a left turn—all these matters should have caused the motorcycle driver to exercise caution, and may very well have given him sufficient time to stop before colliding with Wheeler's car. Perhaps the added weight of a passenger increased the stopping distance of the motorcycle. All these matters were items that the jury could consider, and they bear on the question of whether there was contributory negligence on the part of the motorcycle driver. The correctness and truth of those matters were peculiarly within the province of the jury. While this Court may not concur in the jury's interpretation of those facts, it cannot say that there was so little evidence of contributory negligence that the issue should not have been submitted to the jury. As we said, in Richfield Oil Co. v. Estes, 55 Ariz. 81, 98 P.2d 851:

"* * * Even if we as individuals might have taken a contrary view to that taken by the jury on the disputed points in issue, it does not authorize us as a court to set aside the verdict and reverse the judgment."

The court instructed the jury on A.R.S. § 28–701, subsections A and E, relating to speed under certain conditions. Burns objects that the court added to the statutory words "every vehicle," the parenthetical phrase "(which includes a motorcycle)." Burns argues that this "singles out the plaintiff as falling under this provision." We consider the objection to be without merit. It made clear to the jury the fact that a motorcycle was subject to the same rules as an automobile. It did no more than plaintiff's own requested instruction No. 2 (which the court gave) to the effect that operators of motorcycles have the same *rights* as auto drivers. Burns cannot be heard to say that he is entitled to such an instruction, but that defendant is not entitled to one to the effect that motorcycle operators also have the same *duties* as auto drivers.

Burns also argues that defendant Wheeler's requested instruction No. 4 was erroneous, because it told the jury that Wheeler's duty to anticipate harm was limited to anticipation of usual or likely damage and did not require anticipation of unusual or unlikely damage. Suffice it to say that an instruction couched in exactly the same words was approved in Tucker v. Collar, 79 Ariz. 141, 285 P.2d 178.

Burns also argues that the jury should not have been instructed on his duty to keep a proper lookout, because "there were no facts to show that plaintiff Burns did not keep a proper lookout." Since plaintiff Burns testified under oath that he did not see Wheeler's car at all prior to impact, Burns's contention in this regard is based upon an erroneous premise.

The next question raised by Burns is the question of what standard of care should be expected of a fourteen-

year-old boy driving a motorcycle. The court refused Burns's requested instruction that such a boy could be required to act only as carefully as a reasonably prudent boy of like age, intelligence, and experience. Much has been written about the standard of care to be applied to minors; the classic division has been at ages seven and fourteen. In recent years the tendency has been to tailor the amount of care required to the background of the child involved in each individual accident. Good collections of such cases may be found in 107 A.L.R. 4 and 77 A.L.R.2d 917. However, a different rule applies when the child is driving a motor vehicle. In Dawson v. Hoffmann, 43 Ill.App.2d 17, 192 N.E.2d 695, for example, the trial court instructed that "A minor is not held to the same standard of conduct as an adult," and is required to exercise only such care as a reasonably careful minor of the age, mental capacity, and experience of the child involved in that case. We agree with the Illinois court's statement that:

> "Minors are entitled under the law to be judged by standards commensurate with their age, experience and wisdom * * *, but it would be unfair to the public to permit a minor in the operation of a motor vehicle to observe any other standard of care and conduct than that expected of all others. The law will not countenance the adoption of a double standard of care to be exercised by the drivers of motor vehicles.
>
> "Accordingly, it is our opinion that in the operation of an automobile a minor must exercise the same degree of care as an adult, and that the trial court by the giving of Defendant's Instruction No. 2 committed reversible error."

Burns next contends that it was reversible error for the trial court, after the trial had commenced, to grant defendant a continuance for several days, in order to allow time to find a witness which defendant should have subpoenaed. Such continuances are generally held to be matters within the discretion of the trial court.

Bezat v. Home Owners' Loan Corp., 55 Ariz. 85, 98 P.2d 852. We see no evidence of abuse of discretion in the instant case.

Burns, in his briefs in this Court, makes several other assignments of error which we consider to be without merit, and of insufficient general interest to justify lengthening this opinion further in order to discuss them.

However, after the judgment was entered, defendant had ten days within which to file his statement of costs. A.R.S. § 12–346. He failed to do so, and admits in his brief that this failure was "in all probability through an oversight." Proper objection was timely made by plaintiff, but the court ignored the objections. In this the court erred.

Order taxing costs of $238.80 in the lower court, to plaintiff, vacated; balance of judgment is affirmed, each party to bear his costs on appeal.

STRUCKMEYER and BERNSTEIN, JJ., concur.