495 P.2d 1327

CITY OF SCOTTSDALE, a municipal corporation, and Dwight J. Edwards, Appellants,

v.

Francene KOKASKA, a widow, Appellee.

No. 1 CA-CIV 1099.

Court of Appeals of Arizona,
Division 1,
Department B.

April 11, 1972.

Rehearing Denied May 10, 1972.

Review Denied July 11, 1972.

Marks & Marks, by Philip J. Shea, Phoenix, for appellant City of Scottsdale.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Westover, James A. Teilborg, Phoenix, for appellant Edwards.

Herbert Mallamo and Carson & Curran, by Herbert Mallamo, Phoenix, for appellee.

EUBANK, Judge.

This appeal arises out of an automobile collision that occurred between a vehicle driven by the plaintiff-appellee, Francene Kokaska and a City of Scottsdale police car driven by Officer Dwight Edwards. Both the City of Scottsdale and Officer Edwards were defendants in the trial court and are appellants here. We will refer to the plaintiff-appellee as the "Plaintiff", to the defendant City of Scottsdale as the "City", and to the defendant police officer Edwards as "Edwards".

The accident occurred in the early morning hours of February 23, 1964, on Scottsdale Road approximately one-half mile

north of the intersection of Scottsdale Road and Vista Drive. Scottsdale Road is a four-lane highway at this point consisting of two southbound and two northbound lanes separated only by double painted lines. Just prior to the accident the Plaintiff had been at Joe Hunt's Restaurant and had left there to return to her home. She traveled north on Scottsdale Road at a speed of approximately 35 m.p.h.

Defendant Edwards was employed as a patrolman for the City of Scottsdale and was working the late evening shift on February 23rd. Prior to going on patrol, and for several days previously, Edwards was aware that the brakes on his patrol car were in poor condition. Edwards had advised his immediate supervisor of this fact on the night of the accident, and had even refused to drive the vehicle. His supervisor had ordered him to do so anyway, which he did. The particular defective conditions of the brakes were that they had to be depressed almost to the floorboard before taking hold, and that they would fade and grab.

Edwards went out on patrol and at about 1:15 A.M., on February 23rd he was traveling south on Scottsdale Road in the 200 block. At this point he observed a vehicle traveling north on Scottsdale Road at an excessive rate of speed. Edwards turned his car around and started to chase the speeder. There was conflicting testimony as to whether Edwards was using the red lights and siren during the ensuing chase. He had to stop at the intersection of Camelback Road and Scottsdale Road because of the traffic. At this point the speeder was moving steadily away from him, heading north on Scottsdale Road. Edwards continued the chase at an estimated speed of 60 to 65 m.p.h. with the speeder continuing to outdistance him. As he approached the 5300 block of Scottsdale Road, Edwards saw the Plaintiff's vehicle in the center lane move to the outside, northbound lane, revealing a Vespa motor scooter northbound in the center lane. He also observed two other vehicles in close

proximity approaching in the two southbound lanes of Scottsdale Road and then he observed that the motor scooter had stopped in the center lane to make a left-hand turn. At this point Edwards applied the brakes and swerved left across the centerline in order to avoid colliding with the motor scooter. His patrol car sideswiped the left side of a Mercedes driven by Leonard Burkland which was heading south in the center lane. The rear end of the patrol car fishtailed to the right and then back to the left, continuing into the left rear side of the Plaintiff's vehicle. Plaintiff was injured as a result of the collision. The investigating officer reported that the night was dark, the weather was clear, the road was level, and the surface condition of the road was dry.

The operator of the motor scooter, Jan Sturgeon, testified by deposition that she did not hear a siren until after Edwards' patrol car had gone around her motor scooter. The driver of the Mercedes vehicle, Leonard Burkland, also testified by deposition, that he did not see the patrol car until it swung into his southbound lane and at that point the flashing red lights came on. A passenger in Mr. Burkland's auto, his wife, also testified by deposition that she had changed the radio station on the car radio and sat back and saw the defendant's patrol car in their lane with red lights flashing. Neither of them heard a siren. The Plaintiff testified that she did not see flashing red lights or hear a siren before impact. Edwards and his partner testified that the red light was flashing and the siren was operating during the chase, and the City contends that this patrol car was an authorized emergency vehicle as defined by A.R.S. § 28–624.

The cause was tried to a jury which returned a verdict for the Plaintiff against the defendants in the amount of $90,000. This was later remitted to $70,000 by the trial judge. Both defendant Edwards and the City appeal from the judgment.

## 124

### FORESEEABILITY INSTRUCTIONS

Edwards requested two instructions relating to "foreseeability" both of which are substantially cited in full and approved by the Supreme Court in Tucker v. Collar, 79 Ariz. 141, 285 P.2d 178 (1955). The trial court refused both instructions and Edwards objected, stating, in part:

". . . These instructions set forth a test of *foreseeability as the test of negligence,* and I do not believe that the instruction to be given by Your Honor upon negligence gives any test as to foreseeability, and since one of the crucial issues in this case is whether or not the defendant Edwards should have foreseen that an unlighted motor scooter would be stopped in the center lane of the highway, the question of foreseeability is a crucial question and the jury should be instructed thereon. . . ." (Emphasis added.)

The Plaintiff counters this by arguing that Edwards failed to raise foreseeability as an issue in the "pre-trial statement" filed pursuant to Rule XVI(c), Uniform Rules of Practice, 17 A.R.S. by defining Plaintiff's issues as "negligence, damages, if any and proximate cause;" and, further argues, in effect, that this case is not a "foreseeability" type case requiring such instructions for the reason that it is bottomed on Edwards' violation of specific statutes and involves a question of negligence *per se* or negligence as a matter of law. The first argument is without substance because the question *is* preserved by the pre-trial statement; the second argument is valid, in part.

▮▮▮ Since negligence, as it has developed as a separate tort, is based upon the concept of fault, neither Edwards nor the City, through him, is legally responsible merely because his conduct injured the Plaintiff. 12 Am.Jur.2d Negligence, § 4 (1971 ed.). In order for *actionable* negligence to exist three elements must be satisfied. They are:

1. There must exist a duty on the part of the defendant to protect the plaintiff from the injury of which he complains;

2. The defendant must fail to perform that duty; and

3. An jury to the plaintiff must proximately result from such failure.

Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962); Hersey v. Salt River Valley Water Users' Ass'n, 10 Ariz.App. 321, 458 P.2d 525 (1969). A fourth element is always understood to consist of the proof of an actual loss or damages. The first element is the *duty* issue; the second is the *negligence* issue; the third element is the causal relation or *proximate cause* issue; while the fourth element is the *damage* issue. To which issue is the question of foreseeability directed? Edwards says that it is the test for the second issue—*negligence.* However, our Supreme Court has said that it is an element of the first issue—*duty.* For instance in Mountain States Telephone & Telegraph Co. v. Kelton, 79 Ariz. 126, 285 P.2d 168 (1955), the court said that the duty the defendants owed plaintiff included the duty to take reasonable precautions to prevent injuring the plaintiff and that the reasonable precautions must be measured by the risk of anticipated harm (foreseeable harm). *See also,* Bryan v. Southern Pac. Co., 79 Ariz. 253, 286 P.2d 761 (1955); Matsumato v. Arizona Sand & Rock Co., 80 Ariz. 232, 295 P.2d 850 (1956). In Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652 (1968), our Supreme Court analyzes the foreseeability aspect of duty as follows:

"[6] To put it another way, to constitute actionable negligence the defendant must owe a duty to the plaintiff, the breach of which results proximately in plaintiff's injury. Crouse v. Wilbur-Ellis Co., 77 Ariz. 359, 272 P.2d 352. So, the question which must be answered is, 'What duty did Ortiz owe as the supervising instructor, the breach of which resulted in Morris' injury?' To hold that

Ortiz had to anticipate Gillmor's act and somehow circumvent it is to say that it is the responsibility of a school teacher to anticipate the myriad of unexpected acts which occur daily in and about schools and school premises, the penalty for failure of which would be financial responsibility in negligence. We do not think that either the teacher or the district should be subject to such harassment nor is there an invocable legal doctrine or principle which can lead to such an absurd result." (103 Ariz. at 121, 437 P.2d at 654.)

In Morris the court held as a matter of law that the circumstances of injury were not foreseeable and consequently no duty was owed plaintiff. *See also,* West v. Cruz, 75 Ariz. 13, 251 P.2d 311 (1952).

"Duty" is defined by Professor Prosser, in his work on Torts, 2nd edition (1955), page 166, § 36, as one's obligation recognized by the law to conform to a particular standard of conduct toward another. In 1 Restatement of Torts 2nd, p. 7, § 4 (1965) "duty" is used,

> ". . . to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause."

These definitions, the foregoing cases, and the cases cited hereafter illustrate that three aspects of foreseeability have developed in Arizona law: first, the determination by the court as a matter of law whether as a part of duty, the injury to the Plaintiff was foreseeable under the circumstances; second, as in Tucker v. Collar, *supra,* where the Supreme Court held that foreseeability was a proper question for the jury on the issue of negligence; and third, where the court views foreseeability as an element of proximate or legal causation in intervening force—superseding cause situations as in Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1,

63 P.2d 639 (1937), There seems to be a conflict in these three positions. Arizona, however, is not unique in this conflict as it is a common problem in most states. *See,* Annot., 155 A.L.R. 157, Foreseeability as an Element of Negligence and Proximate Cause (1945), and the supplemented Annot., 100 A.L.R.2d 942 (1965). *See also,* Professor Prosser's fine discussion of the question in his Law of Torts, 3rd ed. 1964, § 50, Unforeseeable Consequences, and Leon Green, Foreseeability in Negligence Cases, 61 Columbia L.R. 1401 (1961).

Edwards cites a number of cases which adequately illustrate this apparent conflict: Mountain States Telephone & Telegraph Co. v. Kelton, *supra,* where the court stated that the question of foreseeability went to the duty issue; Bryan v. Southern .Pac. Co., *supra,* where the court said that the, ". . . risk reasonably to be perceived which defines the duty to be obeyed.", and in addition included foreseeability within the standard of care context; Matsumato v. Arizona Sand & Rock Co., *supra,* where the court found foreseeability as a matter of law on the duty issue and indicated that a jury instruction should be given on foreseeability on the negligence issue; Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962), where the court said that foreseeability goes to the negligence issue; Rosendahl v. Tucson Medical Center, 93 Ariz. 368, 380 P.2d 1020 (1963), where the court stated that foreseeability went to the duty issue and said, "The foreseeability of the danger establishes the duty."; Morris v. Ortiz, *supra,* where the court said that foreseeability went to the duty issue; Burns v. Wheeler, 103 Ariz. 525, 446 P.2d 925 (1968), where the court approved the foreseeable instruction given by the trial court and approved in Tucker v. Collar, *supra,* where it goes to the issue of negligence; Vegodsky v. City of Tucson, 1 Ariz.App.102, 399 P.2d 723 (1965), where the court approved a foreseeability instruction as a part of the standard of care in order for the jury to be properly instructed on the issue of contributory negligence;

Tucson Rapid Transit Co. v. Tocci, 3 Ariz.App. 330, 414 P.2d 179 (1966), where foreseeability is recognized by the court as the key to the determination of proximate cause in intervening force—superseding cause situations; City of Tucson v. Wondergem, 6 Ariz.App. 570, 435 P.2d 77 (1968), where the court stated that the defendant was entitled to have an instruction on foreseeability on the issue of negligence; Wright v. Demeter, 8 Ariz.App. 65, 442 P.2d 888 (1968), where the court said that foreseeability went to the duty issue and the trial court's determination of the duty issue in favor of the defendant was affirmed; Wilson v. City of Tucson, 8 Ariz.App. 398, 446 P.2d 504 (1968), where the court said that foreseeability blends into the negligence and proximate cause issues, but primarily is a question of duty; O'Rielly Motor Co. v. Rich, 3 Ariz.App. 21, 411 P.2d 194 (1966), where the court said, " . . . foreseeability appears to be the gist of the test adopted by our Supreme Court as to whether subsequent negligent conduct is a superseding cause of injury so as to relieve the defendant of liability.", or goes to the issue of proximate cause; Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120 (1965), modified, 2 Ariz.App. 348, 409 P.2d 64 (1966), same as O'Rielly, *supra.*

We believe that the foregoing conflict concerning foreseeability is more apparent than real. A close reading of the cases supports Judge Molloy's statement in Wilson v. City of Tucson, *supra*, where he said:

"There can be no liability in a negligence case unless there is negligent conduct on the part of one which invades a protected legal interest of another who is 'within the range of apprehension' and which is the proximate cause of the injuries for which such other person claims damages. These three elements—negligence, an apprehensible interest, and proximate causation—blend into each other. Foreseeability plays a role in determining the presence or absence of all three elements. It is in many case[s] difficult, if not impossible to consider one of the elements apart from the others. With that in mind, we prefer to rest our decision here on the threshold question of whether the facts in this case disclose any breach of duty to the plaintiff's decedent on the part of the police officers." (8 Ariz.App. at 402, 446 P.2d at 508.)

We analyze the cases as saying that in the first instance foreseeability is always a question of law for the court. The court must determine the duty issue of whether an obligation is recognized by the law requiring the defendant to conform to a particular standard of conduct toward the plaintiff. This includes the question of whether the injury to the particular plaintiff was foreseeable. If it is not foreseeable then the trial judge usually disposes of the matter by dismissal, summary judgment, or the directed verdict route. If it is foreseeable and the duty is found by the trial court to exist, the trial court may or may not refer the foreseeability question to the jury by instruction on the issue of negligence. This issue is usually presented to the jury, as in Tucker v. Collar, *supra*, where there is a *debatable question* whether the injury to plaintiff was within the foreseeable scope of the risk or whether defendant was required to recognize the risk or take precautions against it. *See,* Annot., 100 A.L.R.2d § 3(d), p. 942, *supra.*

In the case at bar the Plaintiff's theory of Edwards' duty to her was based upon Edwards' violation of numerous statutory rules of the road and his failure to use his siren which resulted in her injury. The trial court in permitting the case to go to the jury must have determined the duty issue and the foreseeability question in plaintiff's favor. Thereafter, in a negligence *per se* case such as this, the issues of negligence and proximate cause remained to be determined by the jury under proper instruction. *See* O'Donnell v. Maves, 108 Ariz. 98, 492 P.2d 1205 (1972). In our opinion, under the circumstances of this

case, the trial court properly refused the Tucker v. Collar, *supra,* foreseeability instructions. They were properly rejected because as a matter of law the accident was foreseeable. As the Plaintiff very succinctly puts it—this is not a foreseeability case.

## RESPONDEAT SUPERIOR INSTRUCTIONS

Edwards and the City also assign as error the trial court's giving Plaintiff's instruction # 11 which reads as follows:

> "If you find from the evidence that negligence on the part of the police officer, Dwight J. Edwards, was a proximate cause of the plaintiff's injuries, then the defendant City of Scottsdale, as the employer of officer Edwards, would also be liable for such injuries to the plaintiff."

■ Both of the defendants claim that this instruction violates the rule that the jury is entitled to determine contributory negligence and that the effect of this instruction is to direct a verdict for the Plaintiff. They further complain of the sequence in which the instruction was read to the jury, and that because of sequence, the error was not remedied by the other instructions. Since neither of the defendants objected to the sequence of reading the instructions at the time, they have waived any error in that regard. City of Tucson v. Wondergem, 105 Ariz. 429, 466 P.2d 383 (1970).

Defendants' other contention is based upon Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962). We held in Bland v. Bock, 8 Ariz.App. 97, 443 P.2d 704 (1968), that a contributory negligence instruction requiring a judgment for the defendant if the jury found contributory negligence on the plaintiff's part was reversible error.

■ In considering whether instruction # 11 is deficient, some general rules regarding appellate review of jury instructions are relevant. First, we will not consider instructions piece-meal, but only as a whole; and the test to be applied is whether, upon the whole charge, the jury will

gather the proper rules of law to be applied in arriving at a correct decision. Coyner Crop Dusters v. Marsh, 90 Ariz. 157, 367 P.2d 208 (1961), *modified,* 91 Ariz. 371, 372 P.2d 708 (1962). Further, that if an instruction is incorrect, it is not reversible error if the proper qualifications are given in some other portion of the instruction. Coyner, *supra.*

■ It is quite clear that the purpose of instruction ·# 11 was to inform the jury of ·the doctrine of *respondeat superior,* and that as such it embodies a correct statement of the law. Stone v. Ariz. Highway Commission, *infra.* The record also reveals that the jury was instructed not to single out any one specific instruction but to consider them as a whole. They were also correctly instructed on the effect of contributory negligence of the Plaintiff, if any, in another portion of the charge. The fact that instruction # 11 was forgotten by the court, called to the court's attention and then read at the end of the charge, did not prejudice the defendants.

In our opinion no error was committed. by the trial court in giving Plaintiff's instruction # 11.

## REFUSAL TO INSTRUCT ON APPORTIONMENT

Edwards claims that the trial court erred in refusing to give his requested instruction # 13. This instruction reads:

> "A person who is claimed to be liable for personal injuries can only be liable· to the extent of the injuries caused by himself, if any. If it appears from the evidence that other conditions or accidents contributed to the injuries of which the Plaintiff claims, and if it further appears to the jury that the Plaintiff has not proved by a preponderance of the evidence the extent of the injuries alleged to have been caused by the Defendant, then there may be no apportion-- ment of the damages claimed for such injuries to the Defendant. In other· words, if Plaintiff has not proved by the preponderance of the evidence an appor--

tionment of the damages between those for which Defendant is claimed to be liable and those attributable to other conditions or accidents, you may not render a verdict for any such alleged damages."

This apportionment of damages instruction was based on Sweet Milk Co. v. Stanfield, 353 F.2d 811 (9th Cir. 1965). In that case the plaintiff had been involved in two auto accidents on two successive days, and had settled with the driver of the auto causing the first accident. The suit was against the second driver and the trial judge instructed the jury in effect that they should apportion the damages if they could, but if they could not, then the defendant was liable for the *total* amount of damages resulting from both accidents. The 9th Circuit held that this instruction was erroneous because the burden of proof of damages rests with the plaintiff and if the evidence is evenly balanced and the jury could not separate the damages, then the plaintiff has failed in his burden of proof.

■ In the instant case Edwards points out that the Plaintiff had a hysterectomy in 1960; that she had periodic back difficulty from prior pregnancies; that the Plaintiff had a bony ridge along the L4 and L5 lamina (anterior super level) that was the result of a congenital anomaly; that she had spurring from the posterior superior aspect of the central portion of the L5 lamina; that a doctor testified that it wouldn't have been necessary to fuse the joint if there had been no accident; that she had a cervical problem not related to the accident; and that the doctor gave her 20% general disability which included preexisting conditions. The plaintiff counters this by pointing out that her testimony was to the effect that she had no prior back injuries or problems (other than normal pregnancy backaches) or had ever been treated for a back ailment prior to the accident, and that she was always active (dancing, horseback riding, etc.). Also the medical evidence supports the jury's conclusion that the accident was the precipitating cause of her back injury. It

is of course a general principle that the defendants must take the Plaintiff as they find her at the time of the accident and cannot complain that the Plaintiff was more seriously injured by the collision than another person would have been. 2 Restatement of Torts 2d, § 461 (1965 ed.).

■ It is clear from the record of this case that Plaintiff had no preexisting injury as it is normally thought of. What she did have was an anatomically different spine than that of a "normal" person. In our opinion this was not a proper circumstance justifying an apportionment instruction. Be that as it may, the trial judge did instruct the jury as to aggravation of a preexisting injury and that instruction was properly given. Montague v. Deagle, 11 Ariz.App. 106, 462 P.2d 403 (1969). The effect of the instruction on aggravation is within the holding of Tucson Rapid Transit Co. v. Rubaiz, 21 Ariz. 221, 187 P. 568 (1920), allowing a plaintiff to recover for any aggravation of a preexisting condition caused by a negligent defendant.

## RULE 35(b), RULES OF CIVIL PROCEDURE

Edwards claims it was error for the trial court to refuse to exclude the testimony of two of Plaintiff's doctors, Louis Katz, M. D. and DeWitt Englund, M.D. on the ground that he was not given copies of the doctors' reports pursuant to Rule 35(b), Rules of Civil Procedure, 16 A.R.S.

A few facts are necessary to put this issue in proper perspective. Edwards submitted continuing interrogatories to the Plaintiff in February, 1965. Included among them was a request for the names and reports of the treating physicians. These were answered and then the Plaintiff obtained a protective order fixing five days prior to the pretrial conference for the final answer to the interrogatories. This order was extended to October 21, 1968, at which time the Plaintiff filed supplementary answers to the interrogatories revealing the names of the two doctors for the first time. The trial began on October

23, 1968. When the two medical witnesses were called by the Plaintiff to testify, Edwards moved to exclude their testimony under Rule 35, which was denied by the trial court in both instances.

 The record shows that Rule 35 has not been complied with by Edwards. We find no "order for examination" in the record, while the sanction authorized by Rule 35(b) (1) is expressly conditioned upon compliance with Rule 35(a). Under such circumstances the trial court properly refused to exclude the doctors' testimony.

 Moreover, Edwards had been through the Plaintiff's medical file in Doctor Katz's office prior to trial so he was aware of the existence of a physician-patient relationship. Further, the record shows that neither Dr. Englund nor Dr. Katz prepared a written medical report. In our opinion no error was committed by permitting the doctors to testify.

## OTHER QUESTIONS RAISED

 Edwards also claims error in that the trial court refused to order Plaintiff to produce a statement made by Edwards shortly after the accident. Edwards' counsel was made aware of the existence of the statement through the answers to supplemental interrogatories filed on October 21, 1968, just two days prior to trial. Yet, rather than make the proper motion under Rule 34, Rules of Civil Procedure, 16 A.R. S., Edwards waited until midway through the trial to ask for the production of the statement. By this time, appellee had submitted this document to the clerk of the trial court in a sealed envelope for impeachment purposes, in accordance with Rule 16(c) (1) (vii), Uniform Rules of Practice, 17 A.R.S. Without expressing any opinion regarding the obvious conflict between the rules involved and that raised by the case of Zimmerman v. Superior Court, 98 Ariz. 85, 402 P.2d 212 (1965), *Cf.* Stines v. Superior Court, 102 Ariz. 25, 424 P.2d 153 (1967), we hold that Edwards has shown this court no prejudice arising out of these events and consequently no error was committed. Larson v. Macias, 13 Ariz.App. 562, 479 P.2d 439 (1971). We do not, however, endorse the trial court's failure to require discovery at a much earlier date.

 Edwards also complains that the original verdict of $90,000 was a result of passion or prejudice, and that the fact that the trial judge ordered a remittitur of $20,000 or a new trial is indicative of it. It is clear that this is not the law. In Howard P. Foley Co. v. Harris, 10 Ariz. App. 78, 456 P.2d 398 (1969), it was held that where a trial judge orders a reduction of damages by *remittitur damna* instead of setting aside the verdict, the trial judge has determined that the award is not a result of passion or prejudice. The test to be applied to this situation is whether the verdict is so unreasonable and outrageous (as compared with the legal damages) as to shock the conscience of the court. Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821 (1953). Considering the record, we find that the verdict is not so unreasonable or outrageous as to shock our conscience and thus it will not be disturbed on appeal. Stallcup v. Rathbun, *supra.*

The City raises the question of whether the appellee should have been allowed to amend its original pleading a week prior to the trial of the case. They contend that the amended complaint contained a new cause of action in that the original pleading alleged:

> "That said negligence included, but was not limited to, failure on the part of defendant EDWARDS to maintain a reasonable speed under the conditions then and there existing, failure to keep his said automobile under control, failure to keep a proper lookout, and in other ways failure to adhere to the rules of the road and the regulations, laws and statutes of the State of Arizona."

The amended complaint, in addition to alleging the foregoing, was more specific and blamed the City for its failure to properly maintain the defendant's police vehicle, alleging that the brakes were faulty on

the vehicle and that both of the defendants had knowledge of this fact. Thus, the City claims that this "new" cause of action is barred by the statute of limitations in that it does not relate back to the filing of the original complaint as provided by Rule 15(c), Rules of Civil Procedure, 16 A.R.S.

While the City urges many cases from other jurisdictions upon the Court, it is clear that the trial court had the authority to allow the complaint to be amended. We have recently considered this same problem in the case of Neeriemer v. Superior Court of Maricopa County, 13 Ariz.App. 460, 477 P.2d 746 (1970). There, the original complaint was for medical malpractice, while the amended complaint alleged a battery arising out of the operation. Also, the statute of limitations was set up as a bar to the amended pleading. We stated in Neeriemer that the underlying philosophy of present-day pleading practice has been to substitute a claim stated in simple terms for the technical old form of action pleadings and to have the suit settle the whole transaction out of which the claim arises. Further, we pointed out that the *notice* of the general fact situation out of which the claim arises is the basis for the relation back of Rule 15(c). We held that the critical occurrence set forth in the original pleading was the surgical operation performed and hence, the plaintiff could amend the complaint to include a battery which arose out of the same operation.

■ In the case at bar the defective brake issue was certainly included within the broad allegations of negligence contained in the original complaint and arose out of the same occurrence. Therefore, no new cause of action making the statute of limitations applicable was raised by the amended complaint. Given the general theory of pleading and our holding in Neeriemer, *supra,* the trial court did not abuse its discretion in permitting the Plaintiff to amend the original complaint.

■ The City further alleges, in relation to the foregoing issue, that the trial court should have granted the City a continuance after permitting the Plaintiff's complaint to be amended so close to the trial date. Contrary to appellant's proposed "hardship v. prejudice" test, the question is really one of the exercise of the trial court's discretion, and while it would have been proper for the trial judge to grant a continuance, his refusal to do so is not reversible error here for the reason that the defendants have failed to show that they were unable to adequately meet and defend against this issue in the time period prior to trial.

■ The City further argues that it cannot be liable for torts committed outside of its corporate boundaries. It was stipulated that the accident occurred outside of the City's limits. In Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), the Supreme Court abolished the doctrine of governmental immunity from tort suits. Even prior to Stone, state police officers were personally liable for their negligent operation of patrol vehicles. Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947). Arizona cities, however, have been held responsible for their agents' negligence for many years prior to Stone. City of Tucson v. Dunseath, 15 Ariz. 355, 139 P. 117 (1914). In Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613 (1968), the Supreme Court stated that liability of the city attaches where the employee police officer is acting within the scope of the employment. *See,* 12 Ariz.L.Rev. 229 (No. 1, Spring 1970), Negligence—Duty of Public Officials. Edwards, of course, was a peace officer as defined by A.R.S. § 1–215(20). A.R.S. § 13–1403 authorizes a peace officer to arrest for a misdemeanor, "immediately or on fresh pursuit." According to Edwards' testimony, he was in fresh pursuit of a speeder at the time of the accident. Under such circumstances he was authorized by law to make the arrest if he could have stopped the speeder. It is clear therefore that he was acting within the scope of his employment at the time of the accident.

*See,* Annot., 83 A.L.R.2d 383, Liability arising from accidents involving police vehicles (1962). The record reveals no evidence that Edwards was prohibited by the City from pursuit outside of the corporate limits of the city. Under these circumstances we believe A.R.S. § 13–1403 controls.

 Edwards next contends that the trial court abused its discretion in refusing to grant him a new trial based on the misconduct of Plaintiff's counsel. The misconduct is described in three classes: first, improper cross-examination of Edwards; second, characterization of a defense objection as "snivelling"; third, misrepresentation of the evidence that the brake pedal traveled to within one-half inch of the floor. Our review of the record reveals a spirited contest of the issues in this case on both sides and supports the conclusion of the trial court in rejecting these contentions. In our opinion there was no abuse of discretion in refusing to grant defendants a new trial.

Finally, the City contends that Plaintiff's counsel, in final argument, made material and emotional claims of personal injury which were not supported by the evidence. These claims went to the extent of the Plaintiff's injuries (spine and vagina). No objection was made to the argument and defense counsel for both Edwards and the City argued both claims to the jury. In such circumstances Betz v. Goff, 5 Ariz.App. 404, 427 P.2d 538 (1967) is controlling. In addition, our review of the final argument, while revealing the use of colorful descriptions of the Plaintiff's condition resulting from the accident, shows that it was based upon inferences that arose in Plaintiff's favor from the evidence.

Judgment is affirmed.

HAIRE, C. J., and JACOBSON, J., concur.